1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12   Medtronic Minimed Inc.;        )   CV 12-04471 RSWL (RZx)
     Medtronic Puerto Rico          )
13   Operations Co.; Minimed        )   **ORDER CONSTRUING**
     Distribution Corp.             )   **DISPUTED TERMS IN U.S.**
14                                   )   **PATENT NO. 5,665,065**
                                     )
15                    Plaintiffs,    )
                                     )
16        v.                         )
                                     )
17   Animas Corporation,             )
                                     )
18                                   )
                                     )
19                    Defendant.     )
                                     )
20                                   )
                                     )
21                                   )
                                     )
22   _____)

23        On April 16, 2014, this Court held a <u>Markman</u>

24   Hearing to hear oral arguments for proposed claim

25   constructions regarding certain language in United

26   States Patent No. 5,665,065 (the "'065 patent") [103].

27   Plaintiffs Medtronic Minimed Inc., Medtronic Puerto

28   Rico Operations Co., and Minimed Distribution Corp.

(collectively, "Plaintiffs") and Defendant Animas Corporation ("Defendant") have provided extensive briefing and argument on this matter.  The Court, having reviewed all papers and arguments submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:**

### I. BACKGROUND

Plaintiffs design, manufacture, and distribute portable insulin delivery systems for use by individuals with diabetes.  In relation thereto, Plaintiff Medtronic MiniMed Inc. owns eight separate United States patents, all of which are titled "External Infusion Device with Remote Programming, Bolus Estimator and/or Vibration Alarm Capabilities." First Am. Compl. ("FAC") ¶¶ 10, 15, 20, 25, 30, 36, 41, 48.  These patents were issued on varying dates between April 22, 2003, and October 26, 2010.  <u>Id.</u>  Medtronic Minimed Inc. also owns the '065 patent titled "Medication Infusion Device with Blood Glucose Data Input," which was issued on September 9, 1997.  <u>Id.</u> at ¶ 53.  Medtronic Puerto Rico and MiniMed Distribution are each exclusive licensees of these nine patents. <u>Id.</u> at ¶¶ 10, 15, 20, 25, 30, 36, 41, 48, 53.

Similarly to Plaintiffs, Defendant manufactures and sells portable insulin delivery systems, including the Animas OneTouch Ping Glucose Management System ("OneTouch System"), which was released in 2005.  Am. Answer ¶¶ 4, 11.  According to Plaintiffs, Defendant's

manufacture and sale of the OneTouch System infringes upon each of Plaintiffs' aforementioned patents.   FAC ¶¶ 11, 16, 21, 26, 31, 37, 42, 49, 54.

The Parties disagree on the construction of six claim terms from the '065 patent.   See Dkt. # 68.

Type I diabetes is caused by the pancreas' inability to produce sufficient insulin.   Stone Decl. (Dkt. # 83-11) ¶ 12.   Insulin cannot be taken orally so it is traditionally injected with a syringe according to a multiple daily injection regimen ("MDI").   Id. This typically utilizes long-acting insulin to provide a user's baseline insulin needs (a "basal" delivery) and rapid-acting insulin to provide a user's immediate insulin needs (a "bolus" delivery), such as to counteract carbohydrates consumed in a meal or to correct an elevated blood glucose level.   Id.   Insulin pumps can provide both basal and bolus deliveries.   Id. Such pumps work by operating a mechanized system that infuses insulin into the patient from a reservoir.   Id.

The '065 patent discloses and claims a medication infusion device that is usable with either an insulin pump or an insulin pen.   See '065 patent.   This device receives blood glucose data (such as from an attached glucose sensor or meter or from a peripheral device) and recommends a new dispensing protocol responsive to this data.   Id. at 4:11-30.



The '065 patent describes a device which receives the blood glucose data, responds to manually inputted instructions, and ultimately regulates and operates an insulin pump to administer insulin to the patient.  Id. at 4:11-49.  The device responds to its initial programming and to the glucose reading to provide the patient with three options with respect to control of the insulin dosage rate.  Id. at 4:41-43.



In the first option, the device is set to automatically implement any protocol modification "recommended by the controller software, in response to the glucose reading data input."  Id. at 4:47-48.  In short, the device uses the glucose reading to calculate

1   and administer a new insulin dosage rate.  This option

2   corresponds with block 32 in Figure 3.



*F I G. 3*

In the second option, the device software is set to
provide a recommended dispensing protocol.  _Id._ at
4:51-54.  The patient is then given the opportunity to
accept or reject the recommended modified protocol
through manual input.  _Id._ at 4:55-58.  This option
corresponds with block 34 of Figure 3.

In the third option, the device software allows the
patient to manually input a dosage rate entirely
different from the controller-recommended protocol.
_Id._ at 4:65-67.  This option corresponds with block 38
of Figure 3.

**II. LEGAL STANDARD**

**A.   Claim Construction Generally**

Claim construction of a patent, including terms of
art within claims, is exclusively within the province
of the court, not the jury.  _Markman v. Westview_
_Instruments, Inc._, 517 U.S. 370, 388-89 (1996).

1    It is well-settled that, in interpreting an
2    asserted claim, the court should look first to
3    the intrinsic evidence of record, i.e., the
4    patent itself, including the claims, the
5    specification and, if in evidence, the
6    prosecution history.  See Markman, 52 F.3d at
7    979, 34 U.S.P.Q.2d at 1329.  Such intrinsic
8    evidence is the most significant source of the
9    legally operative meaning of disputed claim
10   language.

11   Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576,
12   1582 (Fed. Cir. 1996).

13   The first step is to look to the words of the
14   claims themselves, both asserted and non-asserted, to
15   define the scope of the patented invention.  Id.
16   Second, it is necessary to review the specification to
17   determine whether the inventor has used any terms in a
18   manner inconsistent with their ordinary meaning.  Id.
19   The specification acts as a dictionary when it
20   expressly defines terms used in the claims or when it
21   defines terms by implication.  Id.  "Claims must be
22   read in view of the specification, of which they are a
23   part."  Id. (citing Markman, 52 F.3d at 979).  The
24   specification is always highly relevant to the claim
25   construction analysis, and usually, it is dispositive;
26   it is the single best guide to the meaning of a
27   disputed term.  Id.  The drawings or figures of the
28   patent are considered with the specification in

interpreting claim language.  <u>Wright Medical Tech.,</u>
<u>Inc. v. Osteonics Corp.</u>, 122 F.3d 1440, 1443 (Fed. Cir.
1997).  Third, the court may also consider the
prosecution history of the patent, if in evidence.
<u>Vitronics Corp.</u>, 90 F.3d at 1582.

Finally, if an analysis of the intrinsic evidence
alone will resolve any ambiguity in a disputed claim
term, it is improper to rely on extrinsic evidence.
<u>Id.</u> at 1583.  Extrinsic evidence is that evidence which
is external to the patent and file history, such as
expert testimony, inventor testimony, dictionaries, and
technical treatises and articles.  <u>Id.</u> at 1584.
Extrinsic evidence in general, and expert testimony in
particular, may be used only to help the court come to
the proper understanding of the claims; it may not be
used to vary or contradict the claim language.  <u>Id.</u>

This approach was affirmed in the Federal Circuit's
*en banc* decision, <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303
(Fed. Cir. 2005).  In that case, the court reiterated
that "[w]e have viewed extrinsic evidence in general as
less reliable than the patent and its prosecution
history in determining how to read claim terms."  <u>Id.</u>
at 1318.

**B.  <u>Claim Construction for Means-Plus-Function</u>**
   **<u>Limitations</u>**

Under 35 U.S.C. § 112(f), applicants are permitted
to make use of means-plus-function language - i.e., "to
express a claim limitation as a means or step for

7

performing a specified function without claiming the structure that performs the function." Biomedino, LLC v. Waters Techs. Corp., 490 F.3d 946, 947 (Fed. Cir. 2007). A means-plus-function claim describes a function to be performed rather than a structure or the materials necessary to perform that function.

"The first step in construing a means-plus-function limitation is to identify the function explicitly recited in the claim." Asyst Techs., Inc. v. Empak, Inc., 268 F.3d 1364, 1369 (Fed. Cir. 2001). The second step is "to identify the corresponding structure set forth in the written description that performs the particular function set forth in the claim." Id. However, "[i]n identifying the function of a means-plus-function claim, a claimed function may not be improperly narrowed or limited beyond the scope of the claim language." Lockheed Martin Corp. v. Space Sys./Loral, Inc., 324 F.3d 1308, 1319 (Fed. Cir. 2003) (citing Micro Chem. Inc. v. Great Plains Chem. Co., 194 F.3d 1250, 1258 (Fed. Cir. 1999)). Likewise, the function may not "be improperly broadened by ignoring the clear limitations contained in the claim language." Id.

"The specification must be read as a whole to determine the structure capable of performing the claimed function." Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1379 (Fed. Cir. 2001). "Structure disclosed in the specification is 'corresponding' structure only

if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." <u>Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.</u>, 248 F.3d 1303, 1311 (Fed. Cir. 2001) (quoting <u>B. Braun Med., Inc. v. Abbott Lbs</u>, 124 F.3d 1419, 1424 (Fed. Cir. 1997)).  Whether a specification "adequately sets forth structure corresponding to the claimed function necessitates consideration of that disclosure from the viewpoint of one skilled in the art." <u>Chicago Bd. Options, Inc. v. Int'l Sec. Exchange, LLC</u>, 677 F.3d 1361, 1367 (Fed. Cir. 2012) (quoting <u>Budde</u>, 250 F.3d at 1376); <u>S3, Inc. v. nVIDIA Corp.</u>, 259 F.3d 1364, 1367 (Fed. Cir. 2001).

Finally, it is the "duty of a patentee to clearly link or associate structure with the claimed function [as] the quid pro quo for allowing the patentee to express the claim in terms of function under section 112, paragraph 6." <u>Med. Instrumentation & Diagnostics Corp. v. Elekta AB</u>, 344 F.3d 1205, 1211 (Fed. Cir. 2003) (citing <u>Budde</u>, 250 F.3d at 1377).

### III. ANALYSIS

In their Amended Joint Claim Construction Statement, the Parties disagree on the construction of six[1] different limitations found in claim 1 of the '065

---

[1] The Parties include in their Amended Joint Construction Statement that they agree that "the terms in the preamble of claim 1 of the '029 patent are limitations."  Dkt. # 68 p.1.  As such, the only claims in dispute are in the '065 patent.

patent.

    1.  <u>"reservoir means for receiving and storing a supply of a selected medication"</u>

The Parties agree that this term is a means-plus-function limitation. Dkt. # 68 p.1. The Parties also agree that the claimed function is "receiving and storing a supply of a selected medication." <u>Id.</u> The Parties disagree as to the corresponding structure.

Plaintiffs propose that the "corresponding structures are a storage reservoir, a syringe, a syringe carried by a housing of an external pump, or a cartridge." <u>Id.</u> Defendant proposes that the structure is "located on the pump (or insulin pen): the block 30 identified as a 'reservoir' in Fig. 2; and the cartridge of medication received in barrel 40 in Fig. 4." <u>Id.</u>

Defendant argues that Plaintiffs' proposed construction is not limited to what is disclosed in the specification and includes future designs that had not yet been developed. Def.'s Mot. for Partial Summ. J. and Opening Claims Construction Br. ("Def.'s Opening Br.") 21:1-5. Plaintiffs contend that the Parties agree that a storage reservoir and cartridge are corresponding structures, but disagree as to what other structure should be included in the construction. Pl.'s Opening Claim Construction Br. ("Pl.'s Opening Br.") 10:15-17. Defendant states that it is willing to accept Plaintiffs' proposed construction if its Motion

for Partial Summary Judgment is not granted.  Def.'s Responsive Claim Construction Br. (Def.'s Responsive Br.") 10:17-20.

Accordingly, given that the Parties appear to agree on the construction of this claim, the Court **ADOPTS** Plaintiffs' proposed construction of "reservoir means." The corresponding structures for this limitation are "a storage reservoir, a syringe, a syringe carried by the housing of an external pump, or a cartridge."

2.   "delivery means for delivering a selected dosage of the medication from said reservoir means to a patient"

The Parties agree that this term is a means-plus-function limitation.  Dkt. # 68 p.1.  The Parties further agree that the claimed function is "delivering a selected dosage of the medication from said reservoir means to a patient." Id.  The Parties disagree as to the corresponding structure.

Plaintiffs propose that the "corresponding structures are a drive motor connected to a syringe piston plunger and a manual plunger depression." Id. p.1-2.  Defendant proposes that the structure is "the pump 28 and catheter tubing 14 in Fig. 1; and the plunger 44 and syringe in Fig. 4." Id.

Defendant argues that Plaintiffs' proposed construction is not limited to the structures disclosed in the specification.  Def.'s Opening Br. 22:4-7. Plaintiffs note that both Parties assert that the

11

plunger described in relation to Figure 4 of the '065 patent is a corresponding structure.  Pl.'s Opening Br. 11:19-20.  Plaintiffs assert that the corresponding structure must include a "drive motor" as the specification states that "[t]he infusion pump operates a small drive motor connected to a syringe piston plunger to administer the medication to the patient." Id. at 11:22-27 (quoting '065 patent at 1:18-20).

Defendant argues that only the "Background of the Invention" portion of the specification addresses a drive motor connected to a plunger.  Def.'s Responsive Claim Construction Br. ("Def.'s Responsive Br.") 8:27-9:1.

Plaintiffs respond that Defendant improperly focuses on the figures of the patent to the exclusion of the disclosures in the specification.  Pl.'s Responsive Br. 7:3-12.

The Court **ADOPTS** Plaintiffs' proposed construction. First, both Parties appear to agree that a plunger and syringe are part of the corresponding structure.  Next, the "drive motor" disclosed in the specification is clearly linked to the asserted function - i.e., delivering the medication to the patient.  See '065 patent at 1:18-20 ("The infusion pump operates a small drive motor connected to a syringe piston plunger to administer the medication to the patient").  In other words, the drive motor is clearly linked to the function of administering medication.  Furthermore,

Plaintiffs are the sole party to present expert evidence regarding what a person of ordinary skill in the art would have understood the specification to disclose with respect to this limitation.  See Stone Decl. (Dkt. # 83-11) ¶¶ 19, 21 (explaining that a person of ordinary skill in the art would have understood that the pump controller sends signals "to the drive motor to effect delivery of insulin by the device").  Finally, the fact that this disclosure is made in one section as opposed to another is inconsequential.  See Budde, 250 F.3d at 1379-80 (explaining that the entire specification must be read as a whole to determine the structure).  Thus, the Court finds that the '065 patent clearly links the "drive motor connected to a syringe piston plunger" and a "manual plunger depression" to the claimed function of "delivering a selected dosage of the medication from said reservoir means to a patient."  The Court finds that the corresponding structures are a "drive motor connected to a syringe piston plunger and a manual plunger depression."

    3.    <u>"controller means for automatically controlling said delivery means to deliver the selected medication dosage to the patient according to a first medication dispensing protocol"</u>

The Parties agree that this term is a means-plus-function limitation.  Dkt. #68 p.2.  The Parties further agree that the claimed function is

"automatically controlling said delivery means to deliver the selected medication dosage to the patient according to a first medication dispensing protocol." Id.  The Parties disagree as to the corresponding structure.  Id.

Plaintiffs propose that the corresponding structure is simply a "controller."  Id.  Defendant asserts that the claim is indefinite and, alternatively, that if the claim is not found to be indefinite, then the following structures should be the corresponding structures: "located on the pump (or insulin pen): the controller 24 internal to pump 10 that responds to buttons 22 in Fig. 1 (col. 4:31); the controller in block 24 shown in Fig. 2; and the 'internal controller' (not shown) in Fig. 4 (col. 5:32); and the controller (not shown) internal to pump 10 in Fig. 5 (col. 5:56-60)."  Id.

Defendant asserts that the claim is invalid for failing to disclose an algorithm that should be used for the controller means software.  Def.'s Opening Br. 13:1-2.  Nevertheless, Defendant alternatively argues that the specification only discloses controllers that located inside the pump or pen.  Id. at 13:25-26.

Plaintiffs argue that the Court should adopt the claims construction adopted by the court in another case involving the '065 patent, Medtronic MiniMed, Inc. v. Smiths Medical MD Inc., Case No. 1:03-cv-00776 (D. Del. June 1, 2005).  Pl.'s Opening Br. 13:3-16 (quoting Kolter Decl. Ex. 4 at 31; citing Stone Decl. (Dkt. #71-

9) ¶ 22).  Plaintiffs argue that Defendant's proposed construction attempts to incorporate structural features that are not necessary to perform the claimed function.  Id. at 13:22-28. (citing Stone Decl. (Dkt. # 71-9) ¶ 26).

Defendant contends that its proposed construction does not incorporate unnecessary structural features. Def.'s Responsive Br. 4:16-24.  Rather, Defendant explains that the ability to interact with the other parts of the claimed device, such as the buttons and pump element, is a key part of how the controller means performs its function.  Id.  Defendant further asserts that there are only two embodiments disclosed in the specification with a controller means and both embodiments disclose an internal controller.  Id. at 4:24-5:8.

Plaintiffs in turn argue that it is legal error to add structure beyond that necessary to perform the claimed function.  Pl.'s Responsive Brief 8:17-20 (citing Northrop Grumman Corp. v. Intel Corp., 325 F.3d 1346, 1352 (Fed. Cir. 2003)).  Plaintiffs contend that Defendant's proposed construction would do so because these structural elements are not necessary to perform the claimed function - e.g., the buttons do not control the delivery means.  Id. at 9:9-23.  Plaintiffs also contend that the location of the controller is not essential to the function.  Id. at 10:13-18.  Thus, Plaintiffs contend, the location limitation would

15

improperly import limitations that are not necessary to perform the function and are not clearly linked to that function. Id. at 10:20-25.

As a preliminary matter, it appears that the Federal Circuit has not held whether prior claims constructions bar relitigation. See Parker-Hannifin Corp. v. Baldwin Filters, Inc., 724 F. Supp. 2d 810, 815 (N.D. Ohio 2010). Courts appear to be split on this issue. Id. (citing Amgen, Inc. v. F. Hoffman-La Roche Ltd., 494 F. Supp. 2d 54, 60 (D. Mass. 2007); Kollmorgen Corp. v. Yaskawa Elec. Corp., 147 F. Supp. 2d 464, 470 (W.D. Va. 2001); TM Patents, L.P. v. Int'l Bus. Mach. Corp., 72 F. Supp. 2d 370, 376 (S.D.N.Y. 1999)). For this reason, while the Smiths Medical claim construction order is certainly persuasive, it is not binding on this Court, particularly as some of the issues, such as the location of the controller, were not litigated in that action. See Rambus Inc. v. Hynix Semiconductor Inc., 569 F. Supp. 2d 946, 968 (N.D. Cal. 2008).

Nevertheless, the Court **ADOPTS** Plaintiffs' proposed construction.

First, neither the pump nor the buttons that Defendant proposes are necessary for performing this claimed function. Rather, the "pump controller" disclosed in the specification is clearly linked with performing this function by operating the drive motor. See '065 patent at 1:21-24. The only controller means

in the specification that controls a delivery means is controller 24. Id. at 4:11-49. Defendant's proposed construction thus includes structural features, such as the pump element 10 and the buttons 22, that are unnecessary in performing the function as the specification does not indicate that either does anything to automatically control the delivery means. As such, the Court declines to import these features as structure. Northrop Grumman, 325 F.3d at 1352.

Next, although Defendants note that the two embodiments disclosed in the specification explicitly disclose internal controllers (Def.'s Responsive Br. 4:24-5:7), the location of the controller does not appear to be linked to the claimed function. There is no language indicating that the controller could not automatically control the delivery means if it were external to the device. Simply because the preferred embodiment suggests a location does not mean that the location is essential to performing the function. See Douglas Dynamics, LLC v. Buys Prods. Co., No. 09-cv-261-bbc, 2010 WL 744253, at *15 (W.D. Wis. Mar. 2, 2010); see also Motorola, Inc. v. Vosi Techs., Inc., No. 01 C 4182, 2001 WL 1646559, at *5 (N.D. Ill. Dec. 21, 2001).

Finally, Plaintiffs are the only party to present expert evidence regarding what a person of ordinary skill in the art would have understood the specification to disclose with respect to this

1   limitation.  See Stone Decl. (Dkt. # 71-9) ¶¶ 22-27;

2   Stone Decl. (Dkt. # 83-11) ¶ 18 (explaining that the

3   '065 patent clearly links the controller to the

4   function of automatically controlling the delivery

5   means to deliver a first medication dispensing

6   protocol).  Such evidence is, of course, relevant -

7   though not conclusive - in construing such claims.  See

8   Phillips v. AWH Corp., 415 F.3d 1303, 1318 (Fed. Cir.

9   2005); Lighting World, inc. v. Birchwood Lighting,

10  Inc., 382 F.3d 1354, 1359 (Fed. Cir. 2004).

11      Accordingly, because Defendant's proposed

12  construction imports limitations unnecessary for

13  achieving the claimed function, the Court rejects

14  Defendant's proposed construction and **ADOPTS**

15  Plaintiffs' proposed construction.  The Court finds

16  that the corresponding structure is a "controller."

17      4.  "means for inputting blood data to said

18          controller means"

19      The Parties agree that this term is a means-plus-

20  function limitation.  Dkt. # 68 p.3.  The Parties

21  further agree that the claimed function is "inputting

22  blood data to said controller means."  Id.  The Parties

23  disagree as to the corresponding structure.  Id.

24      Plaintiffs propose that the corresponding

25  structures are "a glucose sensor or meter used either

26  subcutaneously or adapted to receive and read a glucose

27  test strip and a radio telemetry or infrared receiver."

28  Id.  Defendant proposes that the corresponding

structures are "located either on the pump (or insulin pen) or on a remote sensor: the 'glucose sensor/meter' block 16 shown in Fig. 2; the glucose sensor 16 shown in Fig. 1; and the glucose/sensor meters 16, 16' shown in Figs. 4 and 5." Id.

Defendant argues that Plaintiffs' proposed construction goes beyond what is disclosed in the patent specification and purports to cover any glucose sensor or meter including future designs. Def.'s Opening Br. 19:19-21. Plaintiffs argue that both sides agree that a glucose sensor or meter is the corresponding structure. Pl.'s Opening Br. 15:8-10. Plaintiffs note that the Smiths Medical court construed the claim to include "a radio telemetry or infrared receiver." Id. at 15:14-18 (citing Kolter Decl. Ex. 4 at 32-33).

Defendant argues that the specification discloses a glucose sensor or meter on the pump itself thereby eliminating any need for radio or infrared transmission of blood glucose levels. Def.'s Responsive Br. 9:16-19. Further, Defendant argues that Plaintiffs' corresponding structure rephrases the actual patent specification language. Id. at 9:20-10:2. Plaintiffs object to Defendant's construction, arguing that Defendant wrongly attempts to impose a location limitation. Pl.'s Responsive Br. 12:11-14:3.

The Court **ADOPTS** Plaintiffs' proposed construction. The specification identifies a "glucose sensor or

meter" that may be mounted directly onto the pump housing coupled to an implantable or subcutaneous glucose sensor.  '065 patent at 4:11-30.  This controller is adapted to receive and read a glucose test strip to input blood data to the pump controller.  Id.  Alternatively, a receiver that uses radio telemetry or infrared transmission is also indicated in the specification as a structure for inputting telemetered glucose data to the pump.  Id. at 5:41-60.  As Plaintiffs note, their construction is in line with that of the Smiths Medical court's construction.  See Kolter Decl. Ex. 4 at 32-33.  Further, Plaintiffs are the only party to present expert evidence regarding what a person of ordinary skill in the art would have understood the specification to disclose with respect to this limitation.  See Stone Decl. (Dkt. # 83-11) ¶ 25 (explaining that the blood glucose data can be input via a sensor adapted for receiving and reading a glucose test strip or an implantable or subcutaneous glucose sensor coupled to a radio telemetry or infrared receiver); Stone Decl. (Dkt. # 71-9) ¶ 28.  Defendant's proposed construction, on the other hand, imposes an unnecessary location limitation.  As discussed, supra, simply because a preferred embodiment suggests a location does not mean that the location is essential to performing the function.  See Douglas Dynamics, 2010 WL 744253, at *15.  Defendant's proposed location limitation is not necessary here.  It is clear here

1   that the controller can receive blood glucose data from

2   either an attached sensor or from sensors transmitting

3   data through radio telemetry.  Accordingly, the Court

4   **ADOPTS** Plaintiffs' construction and finds that the

5   corresponding structures are "a glucose sensor or meter

6   used either subcutaneously or adapted to receive and

7   read a glucose test strip and a radio telemetry or

8   infrared receiver."

9        5.   "means responsive to said data for recommending

10            a second medication dispensing protocol"

11        The Parties agree that this term is a means-plus-

12   function limitation.  Dkt. # 68 p.3.  The Parties

13   further agree that the claimed function is

14   "recommending a second medication dispensing protocol

15   that is responsive to the blood data."  Id.  The

16   Parties disagree on the corresponding structure.  Id.

17        Plaintiff proposes that the corresponding structure

18   is a "controller."  Id.  Alternatively, Defendant

19   proposes that if the Court does not find the claim to

20   be indefinite, the Court find that the corresponding

21   structure is "located on the pump (or insulin pen): the

22   'recommend modified protocol' in block 34 of Fig. 3

23   (col. 4:50-57)."  Id. at p.3-4.

24        Defendant argues that the corresponding structure

25   must be the recommended protocol step in block 34 of

26   Fig. 3.  Def.'s Opening Br. 15:21-24 (quoting '065

27   patent at 4:50-55).  Defendant argues that Plaintiffs'

28   proposed construction would encompass any generic

21

controller.  <u>Id.</u> at 16:1-5.  Plaintiffs argue that block 34 of Fig. 3 does not convey structure, but simply recites the function.  Pl.'s Opening Br. 17:10-14.  Further, Plaintiffs argue that the specification of the '065 patent does not include a location limitation for the controller.  <u>Id.</u> at 17:14-17.

Defendant insists that if the Court chooses not to find these claims invalid, then it should at least find that the corresponding structure for this limitation is a controller located on the pump or pen.  Def.'s Responsive Br. 6:25-28.  Plaintiffs argue that Defendant's wrongly attempt to limit the location of the controller.  Pl.'s Responsive Br. 15:18-27. Plaintiffs explain that the location of the controller has no connection to achieving its function.  <u>Id.</u> at 15:28-16:6.

The Court **ADOPTS** Plaintiffs' proposed construction.

First, the '065 patent specification language links a controller with this function.  The specification describes the pump controller as responding to data input from the glucose sensor or meter.  '065 patent at 4:11-15.  The specification states:

> In one mode of operation, the controller 24 can be set to operate the pump element by implementing any dispensing protocol modification which is recommended by the controller software, in response to the glucose reading data input.  Such automatic implement of

a modified dispensing protocol is depicted by block 32 in FIG. 3. . . . **As one import alternative, the controller software can be set to provide a recommended dispensing protocol which can be visually displayed to the patient by means of the display 26. This recommended protocol step is illustrated in FIG. 3 by block 34.**

Id. 4:43-55 (emphasis added). In other words, the controller is described as achieving the function of recommending a second medication dispensing protocol in response to blood data. The specification clearly associates the function of responding to the blood glucose data and recommending a second medication dispensing protocol to the controller.

Second, Plaintiffs present extrinsic evidence on this point. Here, Plaintiffs' expert, Dr. Robert Stone, explains that a person of ordinary skill would have found that the corresponding structure was a controller. Stone Decl. (Dkt. # 71-9) ¶ 29. Dr. Stone also elaborates the three step algorithm performed by the controller in carrying out this function. Id. at ¶¶ 31-37. Plaintiffs also cite to the Smiths Medical court's claims construction order, which also found the corresponding structure for this function to be a controller. Kolter Decl. Ex. 4 at 37-38. Such evidence is relevant and helpful to the Court.

Third, the Court rejects Defendant's proposed

construction for failing to identify corresponding structure and for incorporating unnecessary limitations into the claim.

Although Defendant points to block 34 of Fig. 3 as the corresponding structure, that block simply reiterates the claimed function of recommending a modified protocol. '065 patent at Fig. 3, 3:37-40 ("FIG. 3 is a flow chart illustrating operation of the pump controller and recommending dispensing protocol in response to a current patient parameter"); Stone Decl. (Dkt. # 71-9) ¶ 38.  It is, of course, impossible for the function to perform itself.  And simply pointing to a restatement of the function does nothing to meet the corresponding structure requirement of 35 U.S.C. § 112(f).  See Finisar Corp. v. DirecTV Grp., Inc., 523 F.3d 1323, 1340 (Fed. Cir. 2008).

Further, although Defendant proposes that the corresponding limitation must be "located either on the pump (or insulin pen)" (Dkt. # 68 p.3), it is unclear how or why this is necessary to achieving the claimed function.  The Court of course cannot "import into the claim features that are unnecessary to perform the claimed function." Northrop Grumman, 325 F.3d at 1352 (citing Acromed Corp. v. Sofamor Danke Grp., Inc., 253 F.3d 1371, 1382 (Fed. Cir. 2001)).  And it does not appear that the controller must be located on the pump or pen to perform this claimed function.  Simply because the preferred embodiments in a specification

1    indicate a certain location does not mean that the

2    corresponding structure must be located there.  <u>See</u>

3    <u>Douglas Dynamics</u>, 2010 WL 744253, at *15.

4        Accordingly, because Plaintiffs' construction

5    tracks with the understanding of a person of ordinary

6    skill and because the '065 patent clearly associates a

7    controller with the claimed function, the Court **ADOPTS**

8    Plaintiffs' proposed construction.  Defendant's

9    proposed construction unduly incorporates unnecessary

10   limitations or attempts to tie the function to a

11   restatement of the function.

12       6.  <u>"patient accessible manual set means for</u>

13           <u>enabling said controller means to deliver the</u>

14           <u>medication to the patient according to one of</u>

15           <u>said first and second medication dispensing</u>

16           <u>protocols"</u>

17       The Parties agree that this term is a means-plus-

18   function limitation.  Dkt. # 68 p.4.  The Parties

19   further agree that the claimed function is "enabling

20   said controller means to deliver the medication to the

21   patient according to a selected one of said first and

22   second medication dispensing protocols."  <u>Id.</u>  The

23   Parties disagree as to the corresponding structure.

24       Plaintiffs propose that the "corresponding

25   structures are control buttons, buttons, and a dial and

26   plunger."  <u>Id.</u>  Defendant argues that the claim is

27   indefinite, but alternatively proposes that the

28   corresponding structure is "located on the pump (or

insulin pen): the 'accept/reject modified protocol' in block 36 of Fig. 3.  The patient may accept or reject the recommended second protocol by pressing buttons 22, and the controller delivers either the first medication dispensing protocol or the second medication dispensing protocol."  Id.

Defendant argues that the corresponding structure must be the "accept/reject modified protocol" in block 36 of Fig. 3 because this is the only structure associated with the claimed function.  Def.'s Opening Br. 17:6-26.  Defendant contends that Plaintiffs' proposed structure is overbroad as the specification does not disclose any controller or buttons located outside of either the pump or pen.  Id. 18:6-14.

Plaintiffs argue that the corresponding structure for the recited function are the control buttons, buttons 22, and a dial 42 and plunger 44, and that these structures are clearly linked to the claimed function.  Pl.'s Opening Br. 20:28-21:3.  Plaintiffs point out that while Defendant argues that the "accept/reject modified protocol" in block 36 of Fig. 3 is the corresponding structure; block 36 does not disclose any structure – it merely recites a function. Id. at 21:10-15.  Plaintiffs further note that the specification does not include a location limitation. Id. at 21:16-19.

Defendant argues that although Plaintiffs point to "control buttons, buttons, and a dial and plunger" for

their corresponding structure, this collection of miscellaneous parts cannot perform the recited function, because doing so requires a programmed controller, which Plaintiffs ignore. Def.'s Responsive Br. 7:21-24. Defendant then argues that the patent specification discloses nothing more than block 36 in Fig. 3 - the "accept/reject modified protocol" - and the corresponding structure in the specification is therefore limited to that. Id. at 8:7-9.

Plaintiffs note that the control buttons are used by the patient to cause the controller to deliver the medication and that those buttons are the corresponding structure. Pl.'s Responsive Br. 18:14-16. Plaintiffs also argue that block 36 does not disclose any structure - it merely recites a function. Id. at 18:17-19. Plaintiffs aver that the claimed means are "patient accessible manual set means" and that the control buttons, buttons, or a dial and plunger are all structures that are "patient accessible" and manually operated by the patient. Id. at 18:23-26.

The Court **ADOPTS** Plaintiffs' proposed construction. As Plaintiffs correctly argue, the control buttons, buttons 22, and a dial 42 and plunger 44, are clearly linked to the claimed function of enabling the controller means to deliver the medication. See '065 patent at 2:58-64 ("In accordance with the invention . . . may in the alternative be recommended to the patient by means of the visual display for convenient

acceptance or rejection by manipulation of one or more
of the control buttons"); 4:51-57 ("controller software
can be set to provide a recommended dispensing protocol
which can be visually displayed to the patient . . . In
this flow path, the patient 12 has an opportunity to
reject the recommended modified protocol by appropriate
manipulation of the buttons 22"); 5:34-36 ("As
previously discussed, the patient may operate the dial
42 and plunger 44 to deliver the recommended dosage").
Furthermore, Plaintiff's construction is in line with
that of the <u>Smiths Medical</u> court's construction.  <u>See</u>
Kolter Decl. Ex. 4 at 40.

　　　　Additionally, while Defendant argues that the
corresponding structure is the "accept/reject modified
protocol" in block 36 of Fig. 3, the "accept/reject
modified protocol" merely describes the function that
is performed by manipulating the buttons 22.  Stone
Decl. (Dkt. # 71-9) ¶ 41.  Again, simply pointing to a
restatement of the function does not meet the
corresponding structure requirement of 35 U.S.C. §
112(f).  <u>Finisar</u>, 523 F.3d at 1340.  Furthermore, to
the extent Defendant seeks to impose a location
limitation, such a feature is unnecessary to performing
the claimed function and thus may not be imported as a
claim limitation.  <u>See</u> <u>Northrop Grumman</u>, 325 F.3d at
1352; <u>Chicago Bd.</u>, 677 F.3d at 1366-69; <u>see</u> <u>also</u>
<u>Douglas Dynamics</u>, 2010 WL 744253, at *15; <u>Motorola</u>,
2001 WL 1646559, at *5.

1      Finally, Plaintiffs are the only party to present

2  expert evidence regarding what a person of ordinary

3  skill in the art would have understood the

4  specification to disclose with respect to this

5  limitation.  See Stone Decl. (Dkt. # 71-9) ¶¶ 39-40

6  (explaining that the '065 patent clearly links the

7  control buttons, buttons 22, and dial 42 and plunger 44

8  to the claimed function of enabling the controller

9  means to deliver the medication).  Such evidence is

10  relevant and helpful to the Court's analysis.  In re

11  Hayes Microcomputer Prods., Inc. Patent Litig., 982

12  F.2d 1527, 1543 (Fed. Cir. 1992).

13  ///

14  ///

15  ///

Thus, as the Court finds that the '065 patent clearly links the control buttons, buttons, and a dial and plunger to the claimed function of "enabling said controller means to deliver the medication to the patient according to a selected one of said first and second medication dispensing protocols," the Court finds that the control buttons, buttons and a dial and plunger are the corresponding structures.

### IV. CONCLUSION

For the reasons set forth above, the Court **CONSTRUES** the disputed terms of the '065 patent as laid out above.

**IT IS SO ORDERED.**

DATED: 5/8/14

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge