1   David T. Pritikin (*pro hac vice*)
        <dpritikin@sidley.com>
2   William H. Baumgartner, Jr. (*pro hac vice*)
        <wbaumgartner@sidley.com>
3   Hugh A. Abrams (*pro hac vice*)
        <habrams@sidley.com>
4   SIDLEY AUSTIN LLP
    One South Dearborn
5   Chicago, Illinois 60603
    Telephone: (312) 853-7000
6   Facsimile: (312) 853-7036

7   Theodore W. Chandler (Bar No. 219456)
        <tchandler@sidley.com>
8   SIDLEY AUSTIN LLP
    555 West Fifth Street, Suite 4000
9   Los Angeles, California 90013
    Telephone: (213) 896-6000
10  Facsimile: (213) 896-6600

11  *Attorneys for Defendant*
    *Animas Corporation*

12                     UNITED STATES DISTRICT COURT

13                   CENTRAL DISTRICT OF CALIFORNIA

14

15  |                                      | )  Case No. 2:12-cv-04471-RSWL-RZ |

Medtronic MiniMed Inc.; Medtronic Puerto Rico Operations Co.; and MiniMed Distribution Corp.,

        *Plaintiffs*,

        vs.

Animas Corporation,

        *Defendant*.

)  Case No. 2:12-cv-04471-RSWL-RZ
)
)  **DEFENDANT ANIMAS**
)  **CORPORATION'S BRIEF**
)  **REGARDING ISSUES TO BE**
)  **ADDRESSED AT CASE**
)  **MANAGEMENT CONFERENCE**
)
)  Judge:  Hon. Ronald S.W. Lew
)  Conf. Date:  July 9, 2014
)  Conf. Time:  10:00 a.m.
)  Place:  Courtroom 21
)
)  Discovery Cutoff:  Dec. 18, 2013
)  Pre-trial conf.:  Aug. 5, 2014
)  Trial date:  Sept. 2, 2014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................ 1

I.      A BENCH TRIAL SHOULD BE CONDUCTED WELL IN ADVANCE
        OF THE JURY TRIAL TO RESOLVE WHETHER THE '065 PATENT
        DISCLOSES THE REQUIRED ALGORITHM, AND IF SO, WHAT
        THE ALGORITHM IS.............................................................................. 1

        A.     The Court Must Decide Whether the Specification Discloses a
               Specific Correction Bolus Algorithm, and, If So, What That
               Algorithm Is. ....................................................................... 3

        B.     The Supreme Court Recently Adopted a New and More
               Demanding Standard for Judging the Definiteness of Patent
               Claims................................................................................. 5

II.     A BENCH TRIAL REGARDING LACHES ALSO IS NECESSARY
        BEFORE THE JURY TRIAL. ................................................................ 6

III.    THE JURY TRIAL SHOULD BE PHASED. ................................................. 6

IV.     BOTH SIDES' TECHNICAL EXPERTS' ARE COMMITTED TO
        TESTIFY IN A DELAWARE TRIAL IN LATE SEPTEMBER. ................... 8

CONCLUSION....................................................................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Pursuant to the Court's June 6 Order (Dkt. 121), Defendant Animas Corporation addresses the topics raised in its application to hold a case management conference (Dkt. 116).

The jury trial in this matter, set to begin September 2, 2014, was preliminarily estimated to last eight days.  (Dkt. 67, 73.)  But developments in this case have thrown into doubt the viability of proceeding on the current schedule.  First, the Court has not yet decided whether U.S. Patent No. 5,665,065 (the " '065 patent") discloses the algorithm required to perform the claimed function, and if so, what that algorithm is. This question is for the Court to decide (as explained below), it needs to be resolved before the case is tried to a jury, and a short bench trial should be conducted for that purpose.  Second, eight trial days will not allow sufficient time to try even the liability issues, given the complexity of the disputed issues that have now emerged.  Since March 2014, for example, the parties have exchanged expert reports from fourteen different experts that bear on the liability issues.  Third, the parties' two principal technical experts have a scheduling conflict later in September, so it would not be feasible merely to extend the length of the jury trial with the current starting date.

## ARGUMENT

**I.    A BENCH TRIAL SHOULD BE CONDUCTED WELL IN ADVANCE OF THE JURY TRIAL TO RESOLVE WHETHER THE '065 PATENT DISCLOSES THE REQUIRED ALGORITHM, AND IF SO, WHAT THE ALGORITHM IS.**

In January 2014, Animas moved for partial summary judgment of indefiniteness of the asserted claims of the '065 patent on the ground that their "controller means" limitations lacked corresponding structure, including an algorithm for executing the claimed function.  The parties agreed that one of the "controller means" limitations ("controller means including means responsive to said data for recommending a second medication dispensing protocol") required that a corresponding algorithm be disclosed.  (Dkt. 105 at 20.)  The Court concluded that there were genuine issues of

DEFENDANT ANIMAS CORPORATION'S BRIEF REGARDING ISSUES TO BE ADDRESSED AT CASE MANAGEMENT CONFERENCE

fact as to whether this algorithm was disclosed and therefore denied summary judgment. (*Id.* at 28.) Thus, whether the '065 patent discloses the required algorithm, and if so, what the algorithm is, remain undecided.

These issues must be decided by the Court, not the jury, because they bear on whether the asserted claims are invalid for indefiniteness. As the Federal Circuit has explained, "[w]hether a claim complies with the definiteness requirement of 35 U.S.C. § 112 ¶ 2 is a matter of claim construction," *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311 (Fed. Cir. 2012), and "construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).[1]  When, as here, "the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  It would be erroneous to let the jury resolve the dispute. *See id.* (holding that unresolved claim construction dispute was "improperly submitted to the jury").

Furthermore, the Court must resolve this question before the jury trial, because the jury will need to be instructed on what the algorithm is, if there is one.  For means-plus-function claims, infringement and validity are assessed by comparing the corresponding structure (and any equivalents) to the accused products and the prior art.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1299 (Fed. Cir. 2009).  The algorithm is part of the corresponding structure.  Thus, it would be

---

[1] The Supreme Court recently granted *certiorari* to decide "[w]hether a district court's factual finding in support of its construction of a patent claim term may be reviewed *de novo*, as the Federal Circuit requires (and as the panel explicitly did in this case), or only for clear error, as Rule 52(a) requires." Pet. at i, *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, No. 13-854 (Jan. 16, 2014), *available at* http://sblog.s3.amazonaws.com/wp-content/uploads/2014/03/Petition-for-a-Writ-of-Certiorari1.pdf; *see* 134 S.Ct. 1761 (2014) (granting *certiorari*).  But there is no dispute that claim construction is for the court, not the jury, given the Supreme Court's decision in *Markman*.  For example, the question presented in *Teva* recognizes that it is the "district court" that must construe the claims, not the jury, even though claim construction may involve "factual finding[s]." *Id.*

ANIMAS CORPORATION'S MEMORANDUM REGARDING ISSUES TO BE ADDRESSED AT CASE MANAGEMENT CONFERENCE

impossible for the jury to perform its function without first being instructed as to what the corresponding structure is, including the identity of the algorithm.  And if the Court were to conclude that the algorithm is not disclosed (as Animas contends), then the claims would be invalid for indefiniteness and there would be no need for the parties to address the '065 patent at all during the jury trial.

The most efficient way to proceed would be for the parties to present the relevant evidence at a short bench trial.  This could likely be accomplished in one or two days, but the bench trial should be conducted well in advance of the jury trial so that the Court has adequate time to rule before the jury trial begins.

### A. The Court Must Decide Whether the Specification Discloses a Specific Correction Bolus Algorithm, and, If So, What That Algorithm Is.

The question for the Court is whether the '065 patent specification discloses a specific algorithm for performing the function of recommending a second medication dispensing protocol in response to the blood data, and if so, what that algorithm is. *See Triton Tech of Texas, LLC v. Nintendo of America, Inc.*, No. 2013-1476, 2014 WL 2619546, at \*2 (Fed. Cir. June 13, 2014) ("If the function is performed by a general purpose computer or microprocessor, then the specification must also disclose the algorithm that the computer performs to accomplish that function.  Failure to disclose the corresponding algorithm for a computer-implemented means-plus-function term renders the claim indefinite.") (internal citation omitted).  If the Court finds (as Animas contends) that the algorithm is not disclosed, then the claims are invalid for indefiniteness and the inquiry ends there.  *Id.*  If the Court finds that an algorithm is disclosed, then the Court would also need to identify the algorithm.

It is not sufficient that possible algorithms were known in the art that could have been used to practice the claimed invention.  Definiteness requires that the specification disclose a particular algorithm so that the metes and bounds of the claim are known.  In a recent decision, the Federal Circuit invalidated a means-plus-function

3

claim involving, as here, the programming of a microprocessor to perform a stated function. In that case, the patent specification referenced "numerical integration," and the Federal Circuit agreed with the district court that this disclosure was "not an algorithm but is instead an entire class of different possible algorithms used to perform integration." *Id.* at *3.

Nor is it sufficient that a person of skill could have come up with an algorithm that would work. *See id.* ("The fact that various numerical integration algorithms may have been known to one of ordinary skill in the art does not rescue the claims. . . . The district court correctly recognized that '[a]lthough a person of skill in the art might be able to choose an appropriate numerical integration algorithm and program it onto a microprocessor, the [p]atent discloses no algorithm at all . . . [and therefore it] does not satisfy the disclosure requirement of section 112 ¶ 6.").

Animas believes that the needed bench trial could be completed in a day or two. Animas would offer testimony from its technical expert, Professor Gail Baura. Additionally, Frederick C. Colman, a named inventor on the '065 patent, has given deposition testimony that Animas would offer.

To avoid summary judgment of indefiniteness, Plaintiffs offered a declaration from Dr. Robert Stone in which he proposed an algorithm that could have been used to perform the claimed function. (Dkt. 83-11 at ¶ 11.) But in his June 2014 deposition, Dr. Stone qualified or recanted many of the opinions he offered in his February 2014 deposition, related to the summary judgment motion. *E.g.*, *compare* Exh. A, 2/14/2014 Stone Dep. Tr., at 22:3–8 ("Q. And does the '065 patent disclose using insulin on board to calculate a bolus? A. No.") *with* Exh. B, 6/2/2014 Stone Dep. Tr., at 183:9–24 (testifying that he had not looked into whether it would have been possible for the algorithm to take account of insulin on board), *compare* Exh. A at 23:6–12 ("Q. Does the '065 patent disclose an algorithm that uses multiple glucose readings to calculate the bolus? A. The only thing I see in the '065 is based on a

4

ANIMAS CORPORATION'S MEMORANDUM REGARDING ISSUES TO BE ADDRESSED AT CASE MANAGEMENT CONFERENCE

single reading.  Q. A single blood glucose reading?  A. That's correct."), 31:17–21 ("Q. And only a single blood glucose reading is used as an input to the bolus calculator of the -- in the algorithm of the '065 patent?  A. That is the only one that is described, yes.") *with* Exh. B at 179:3–7 ("Q. Fair enough.  Is it your view then that this excludes the possibility of using the past two blood glucose readings?  A. I have not been asked to analyze that and I have no opinion on it.").  A bench trial would allow the Court to sort through and resolve the disputed facts underlying whether the '065 patent specification discloses the required algorithm.

### B.   The Supreme Court Recently Adopted a New and More Demanding Standard for Judging the Definiteness of Patent Claims.

The legal standard for judging indefiniteness has changed since the Court heard Animas's motion for partial summary judgment of indefiniteness of the '065 patent. In *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014), the Supreme Court rejected and replaced the Federal Circuit's test for indefiniteness.  Under the previous standard, a claim was indefinite only if it was "not amenable to construction" or "insolubly ambiguous."  *Nautilus*, 134 S. Ct. at 2127.  Now, "a patent's claims, viewed in light of the specification and prosecution history," must "inform those skilled in the art about the scope of the invention with reasonable certainty" in order to escape indefiniteness.  *Id.* at 2129.  The *Nautilus* opinion thus imposed a more rigorous definiteness standard that must now be used in judging validity.

In addition, after the summary judgment hearing in this case, the Federal Circuit, sitting *en banc*, vacated the panel decision in *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490 (Fed. Cir. 2014).  *See Elcommerce.com, Inc. v. SAP AG*, No. 2011-1369, slip op., at 2 (Fed. Cir. June 6, 2014) (*en banc*).  Plaintiffs relied heavily on the now-vacated *Elcommerce* decision in arguing against summary judgment of indefiniteness.  *See* Exh. C, 4/16/2014 Hr'g Tr., at 61:3–10, 64:19–23, 65:6–10, 65:22–66:7, 66:8–14, 68:4–13, 90:5–11.  This Court also relied on the now-vacated

ANIMAS CORPORATION'S MEMORANDUM REGARDING ISSUES TO BE ADDRESSED AT CASE MANAGEMENT CONFERENCE

*Elcommerce* decision to deny Animas's motion for summary judgment of indefiniteness.  (*See* Dkt. 105 at 28.)

## II.  A BENCH TRIAL REGARDING LACHES ALSO IS NECESSARY BEFORE THE JURY TRIAL.

Animas asserts that the equitable doctrine of laches limits Plaintiffs' ability to recover pre-complaint damages in this case for all fourteen asserted claims.  Animas has moved for partial summary judgment on the laches issue with respect to six of the asserted claims (Dkt. 143), but even if that motion is granted, the Court still would need to consider Animas's laches defense as to the other eight claims.

The Court should decide the laches issue before the jury trial.  If any laches issues remain unresolved when the case is presented to the jury, then the verdict form will need to split out pre-complaint and post-complaint damages for each claim where a laches issue remains.

There is no Seventh Amendment problem with resolving the laches issues before the jury trial begins, because the issues surrounding Plaintiffs' delay in filing suit do not bear on the infringement or validity questions that the jury will decide.

## III.  THE JURY TRIAL SHOULD BE PHASED.

Animas moved to bifurcate damages from liability in May 2013.  (Dkt. 32.)  At that time, the parties were "in the middle of discovery," and the final pretrial conference was "one year away."  (Dkt. 44 at 4.)  The Court considered Animas's motion "premature" and denied it without prejudice to Animas "raising anew its request for bifurcation of damages at a more timely point in the future."  *Id.*  Now, with discovery closed and the final pretrial conference mere weeks away, Animas renews its request.  Specifically, Animas proposes conducting the jury trial in two phases to a single jury, with the liability issues tried first and the damages issues tried thereafter (if necessary) to the same jury.

ANIMAS CORPORATION'S MEMORANDUM REGARDING ISSUES TO BE ADDRESSED AT CASE MANAGEMENT CONFERENCE

The Federal Circuit has noted that "district courts, in their discretion, may bifurcate willfulness and damages issues from liability issues in any given case." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 719 F.3d 1305, 1319 (Fed. Cir. 2013) (*en banc*). Indeed, "bifurcation is appropriate, if not necessary, in all but exceptional patent cases." *Id.* at 1308 (quoting district court decision).

Here, the jurors will be asked to assess validity for fourteen asserted claims and will also have to resolve the question of infringement for some of them. The claims involve a miscellany of subjects, including insulin delivery patterns, remote control features, and insulin bolus calculations. If any claim is found valid and infringed, the jurors will then have to determine the amount of damages. Plaintiffs' damages expert has offered theories based on both lost profits and a reasonable royalty. He has come up with different potential royalty rates, depending on which combination of asserted claims is found valid and infringed. If no lost profits are awarded, the royalty base changes. For Animas's damages case, its experts have calculated the design-around costs for each of the asserted claims, such that damages could be adjusted based upon which combination of claims is found valid and infringed. With fourteen asserted claims, there are many possible outcomes under either side's damages approach.

Phasing the trial to resolve liability first would allow the parties to present damages evidence that only bears on the valid and infringed claims, if any. Phasing the trial also has the potential to shorten the trial; in the event the jury finds that no asserted claim is valid and infringed, there would be no need to present any damages evidence to the jury.

Moreover, presenting liability evidence separately from the damages evidence would reduce the risk of jury confusion. Both the liability issues and the damages issues in this case are extraordinarily complex. Allowing the jury to focus on liability separately from damages will simplify an otherwise daunting task.

ANIMAS CORPORATION'S MEMORANDUM REGARDING ISSUES TO BE
ADDRESSED AT CASE MANAGEMENT CONFERENCE

## IV. BOTH SIDES' TECHNICAL EXPERTS' ARE COMMITTED TO TESTIFY IN A DELAWARE TRIAL IN LATE SEPTEMBER.

Plaintiffs' principal technical expert (Robert Stone) and Animas's principal technical expert (Gail Baura) are serving as experts in an unrelated patent case in the District of Delaware, *Massimo v. Philips Electronics North America*, No. 1:09-cv-0080.  The Delaware action is set for trial starting on September 15, 2014 and ending on September 25, 2014.  Because both Stone and Baura are expected to testify in this case on both liability and damages issues, it would be problematic to simply extend the currently scheduled trial (from September 2 through 12) into late September.

One alternative would be to schedule the jury trial later in the fall and use the time around September 2 to conduct a short bench trial on the '065 patent algorithm issue and Animas's laches defense.

## CONCLUSION

Animas respectfully requests that the Court conduct a bench trial starting September 2 on the '065 patent algorithm and laches issues, reschedule the jury trial for later in the fall, and phase the jury trial to address liability issues first.

Dated:  June 24, 2014

SIDLEY AUSTIN LLP


By:   /s/ David T. Pritikin
                David T. Pritikin


David T. Pritikin (*pro hac vice*)
       <dpritikin@sidley.com>
William H. Baumgartner, Jr. (*pro hac vice*)
       <wbaumgartner@sidley.com>
Hugh A. Abrams (*pro hac vice*)
       <habrams@sidley.com>
SIDLEY AUSTIN LLP

8

One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

Theodore W. Chandler (Bar No. 219456)
    <tchandler@sidley.com>
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendant*
*Animas Corporation*

ANIMAS CORPORATION'S MEMORANDUM REGARDING ISSUES TO BE
ADDRESSED AT CASE MANAGEMENT CONFERENCE